21-6589
*Al Saidi v. Blanche*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2025
No. 21-6589

**YAHYA AMEEN MUSLEH AL SAIDI,**
*Petitioner*,

v.

**TODD BLANCHE,**
**ACTING UNITED STATES ATTORNEY GENERAL,**
*Respondent*.

---

On Petition for Review of an Order
of the Board of Immigration Appeals.

---

ARGUED: OCTOBER 27, 2025
DECIDED: AUGUST 3, 2026

---

Before:     CABRANES, PARK, and MENASHI, *Circuit Judges*.

Yahya Al Saidi was ordered removed from the country because of a conviction for first-degree assault. He challenges the denial of his application for deferral of removal under the Convention Against Torture. He argues that the immigration judge erred in dismissing his application for lack of corroboration. The Board of Immigration

Appeals decided that Al Saidi forfeited his challenge to the dismissal for lack of corroboration because he challenged only a purported adverse credibility finding. We conclude that the BIA did not abuse its discretion by deciding that the argument was forfeited. We hold that an immigration judge does not need to make an adverse credibility finding before requiring corroboration. The immigration judge may require corroboration whenever it would be reasonably expected to be available and would be helpful to his consideration of the case. Accordingly, the lack of corroboration was an independent basis for denying the relief of deferral of removal under the Convention Against Torture. We further conclude that the decision of the agency was supported by substantial evidence. We deny the petition for review.

---

STEVEN HASKOS (Craig Relles, *on the brief*), Relles Law, PLLC, White Plains, NY, *for Petitioner*.

JOHN F. STANTON, Trial Attorney, Office of Immigration Litigation (Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division; Jessica E. Burns, Senior Litigation Counsel, Office of Immigration Litigation, *on the brief*), United States Department of Justice, Washington, DC, *for Respondent*.

---

MENASHI, *Circuit Judge*:

Yahya Ameen Musleh Al Saidi petitions for review of a decision of the Board of Immigration Appeals ("BIA") that affirmed the decision of an immigration judge ("IJ") to deny his application for deferral of removal under the Convention Against Torture ("CAT"). *See In re Al Saidi*, No. A-055-782-570 (BIA Oct. 15, 2021), *aff'g* No. A-

055-782-570 (Immigr. Ct. Fishkill Apr. 20, 2021). He argues that (1) the IJ erred by relying on "trivial" inconsistencies in his testimony to make an adverse credibility finding and (2) the erroneous adverse credibility finding led the IJ to deny his claim for lack of corroboration. The BIA decided that Al Saidi failed to challenge the IJ's decision to require corroboration in his administrative appeal. According to the BIA, the IJ required corroboration based on the quality of Al Saidi's testimony without making an adverse credibility finding. Because Al Saidi offered no argument that the IJ improperly required corroboration, the BIA considered that issue forfeited.[1]

We conclude that the BIA did not abuse its discretion by deciding that the argument was forfeited. An immigration judge does not need to make an adverse credibility finding before requiring corroboration. The immigration judge may require corroboration whenever it would be reasonably expected to be available and would be helpful to his consideration of the case. Accordingly, the lack of corroboration was an independent basis for denying the relief of deferral of removal under the CAT. We further conclude that the decision of the agency was supported by substantial evidence. We deny the petition for review.

---

[1] The BIA described the forfeiture as a "waiver," but while those terms "are often used interchangeably," the term "*[w]aiver* is best reserved for a litigant's intentional relinquishment of a known right, whereas *forfeiture* is more appropriate when a litigant's action or inaction is deemed to incur the consequence of loss of a right, or a defense." *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 n.10 (2d Cir. 2023) (emphasis added) (internal quotation marks and alteration omitted).

3

**BACKGROUND**

During Yahya Al Saidi's childhood, his family began to feud with the rival Balwi family that had sought to control his home city of Ibb, Yemen. *See* Cert. Admin. R. 237-38, 261. His life changed in two ways around 2010. First, he married his wife Diana, who gave birth to a daughter. Second, the conflict with the Balwis took on a new dimension. According to Al Saidi, one of the elder Balwi sons, Alaw Balwi, sought to align his family with the Houthis, a political-military movement that planned a takeover of Yemen. Al Saidi objected to Alaw Balwi's "criminal behavior around our childrens and our women," explaining that "we don't like … the ideas of … robbing people and killing people and terrorizing people" and that the Balwis should "take it outside the neighborhood." *Id.* at 137.

Following this objection, according to Al Saidi, Alaw Balwi started a campaign of persecution against him. Al Saidi hid in his house for months and when he exited he disguised himself in women's clothing. *See id.* at 187. No member of the Al Saidi family suffered harm from the Balwis during this time. *See id.* at 166-67. Eventually, Al Saidi left Yemen for the United States, which he could do because Diana is an American citizen. *See id.* at 508 (noting his IR-1 visa). In November 2012, he arrived in New York, where he was joined by Diana, their children, and his adoptive parents, the Al Zandanis.

But the family rivalry followed him. In June 2014, Al Saidi and his adoptive brother Bassam Al Zandani were confronted by the father and brother of Alaw Balwi while "walking home at night" in Yonkers. *Id.* at 139. In the ensuing altercation, Al Saidi stabbed the two Balwis with a box cutter. *See id.* at 138-39, 176. He was convicted of

first-degree assault, second-degree assault, and first-degree gang assault and is serving a fifteen-year sentence.

**I**

Following Al Saidi's conviction, the Department of Homeland Security initiated removal proceedings. If an alien is convicted of a "particularly serious crime," he is ineligible for asylum, 8 U.S.C. § 1158(b)(2)(A)(ii), statutory withholding of removal, *id.* § 1231(b)(3)(B)(ii), and withholding of removal under the CAT, 8 C.F.R. § 1208.16(d)(2)(i). Al Saidi does not dispute that he was convicted of an "aggravated felony crime of violence" and therefore of a particularly serious crime. Cert. Admin. R. 47; *see* 8 U.S.C. §§ 1101(a)(43)(F), 1158(b)(2)(B), 1227(a)(2)(A)(iii). Yet an alien who has committed a particularly serious crime may still seek deferral of removal under the CAT. *See* 8 C.F.R. § 1208.17(a). "[U]nder regulations implementing the CAT," removal will be "deferred if the applicant establishes that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Singh v. Garland*, 11 F.4th 106, 115 (2d Cir. 2021) (quoting 8 C.F.R. § 1208.16(c)(2)).

In support of his application for that relief, Al Saidi alleged that he would likely be tortured if he were returned to Yemen. He claimed that the Balwi family is determined to exact revenge on him for opposing Alaw Balwi's alliance with the Houthis and for the 2014 assault. Although the Balwis do not govern Ibb, Al Saidi explained that the Houthis rule 80 percent of the population of Yemen and have established checkpoints throughout the country. Al Saidi argued that the Houthis would locate him and turn him over to the Balwis. The Balwis would then subject him to torture without hope of protection from the government.

The testimony at the hearing reflected this theory but was often vague and inconsistent. Al Saidi testified, for example, that Yemeni custom allows a family to pay off a revenge-seeker to avoid harm. The IJ asked whether anyone tried to settle his dispute with the Balwis. Al Saidi named a family member, Abdullah, and then added that some other neighbors also tried to settle the dispute. The IJ asked: "why don't you just tell me everybody who tried to settle the dispute. Abdullah, who else?" Cert. Admin. R. 169. Al Saidi responded that Hamud Balwi also tried, but no one else had. Yet Al Saidi had submitted an affidavit stating that his friend Nageeb Ghaleb had recently tried to settle the dispute. At the hearing, Al Saidi attempted to explain the inconsistency by stating that although Ghaleb is "a close friend to us," Al Saidi had not asked him to settle the dispute. *Id.* at 190.

Other witness testimony reflected inconsistencies. One relative of Al Saidi said in a sworn statement that she had "heard from the females of the Balwi family that they were upset and affected" by the rivalry. *Id.* at 406. But she later testified that she had never met any Balwi women, and she explained that her statement was based on secondhand hearsay. *See id.* at 210-12. Another relative wrote that he "heard on the street that Balwi's family … wanted Yahya to shed blood in revenge for what happened in the United States," *id.* at 403, but he later testified that he heard the threat directly from Alaw Balwi at a wedding, *see id.* at 228-29. And Al Saidi's adoptive brother Bassam Al Zandani wrote that there was a warrant for Al Saidi's arrest in Yemen, but he later testified that he had no firsthand knowledge of a warrant and did not know the original source of that information. *See id.* at 263-64, 378.

At the hearing, the IJ asked Al Saidi why his other family members did not testify or submit affidavits. His wife, sister, and

adoptive father live in the United States, and the IJ heard that Al Saidi had communicated with his wife the previous night and had spoken with his sister within the preceding few months. Al Saidi responded that while his wife would know about the threats from the Balwis in Yemen and about the assault in 2014, she did not testify because she could not speak English and his lawyer said she would "come back to her if she need[ed] anything from her." *Id.* at 191. Al Saidi did not explain the absence of his sister and adoptive father, nor did he request time to obtain a statement from his wife or permission for her to attend the hearing virtually. The government observed in summation that "there's no testimony or affidavits from key witnesses, such as the respondent's wife, who lived with him in Yemen in 2011 to 2012, and who he said knew about the problems there," and such as "the respondent's stepfather, as we're referring to the person who raised him, who should also have a great deal of knowledge about both the scope of the feud between the families and the scope of the efforts to resolve this feud between the families without any blood being shed." *Id.* at 270-71.

## II

The IJ denied Al Saidi's application for relief on two independent grounds. First, the IJ noted his "concerns as to the quality of the testimony provided and the credibility of the witnesses." *Id.* at 49. He identified inconsistencies in the testimony and explained that, apart from the inconsistencies, the testimony was vague and based on layers of hearsay. *See id.* at 49-56. The IJ did not make an adverse credibility finding but said that he "finds it necessary for [Al Saidi] to corroborate his application with all reasonably available information." *Id.* at 56-57. He said that "there was reasonably available evidence to [Al Saidi] that was not provided to the Court." *Id.* at 57. Al Saidi's wife, sister, and adoptive father were

7

in the United States and could have testified "about what happened to [Al Saidi] in Yemen" and "the threats that the Balwi family purportedly is making to [Al Saidi] from Yemen." *Id.* Because Al Saidi "failed to provide sufficiently persuasive testimony and failed to sufficiently corroborate his application," the IJ denied his application. *Id.* at 58.

Second, the IJ denied the application on the merits. He determined that Al Saidi had "not established that each [step] in his hypothetical chain of events is more likely than not to occur." *Id.* at 63; *see Matter of J-F-F-*, 23 I. & N. Dec. 912, 917-18 (AG 2006) (denying an application for CAT relief because "[t]he evidence does not establish that any step in this hypothetical chain of events is more likely than not to happen, let alone that the entire chain will come together to result in the probability of torture of respondent"). The IJ reasoned that any threat from the Balwis might no longer be serious, given the vague testimony about the threat; that even if it were serious, it might be resolved monetarily; that even if the Balwis or the Houthis looked for him, he might not be located; and that even if the Houthis intercepted him, Al Saidi had "not established that all of the 200,000 to 300,000 Houthi members or that a majority of them have knowledge of the promise between the Balwi family and [Al Saidi]." Cert. Admin. R. 63. So "even if the Court were to accept as true that the Houthis control ports in Yemen and that they have established checkpoints in Yemen, [Al Saidi] has not demonstrated it is more likely than not that should [Al Saidi] find himself at a Houthi checkpoint that the Houthi member at that checkpoint will have sufficient knowledge of the dispute between [Al Saidi] and the Balwi family, which would result in that Houthi member turning [Al Saidi] over to the custody of the Balwi family." *Id.* Indeed, Al Saidi "testified

he has not received any direct threats from the Balwi family or from the Houthis since leaving Yemen in 2012." *Id.* at 62.

The IJ separately determined that Al Saidi had "not satisfactorily demonstrated that internal relocation is impossible," meaning that Al Saidi could live in a part of Yemen that the Houthis do not control, as one in five Yemenis does. *Id.* An alien's "ability to relocate internally means that he cannot establish a likelihood of torture." *Singh*, 11 F.4th at 118; *see* 8 C.F.R. § 1208.16(c)(3) (providing that when "assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal," the agency considers "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured").

### III

Al Saidi raised two arguments on appeal to the BIA. First, he argued that the IJ erred "because the adverse credibility determination is based principally on perceived rather than actual discrepancies." Cert. Admin. R. 17 (capitalization omitted). He said that the inconsistencies on which the IJ relied were "trivial" and "improperly perceived," *id.* at 17-21, and that there was "nothing inherently implausible" about the testimony, *id.* at 21. Al Saidi told the BIA that "[r]emand is therefore necessary" for the IJ to "render a new credibility decision, and to independently assess the credibility of the supporting witnesses, and whether corroborating evidence is needed in light of the Respondent's credible testimony." *Id.* at 22. Second, Al Saidi argued that he met his burden to establish eligibility for relief under the CAT because "the uncontroverted evidence reveals that the Houthi-affiliated Balwi family intends to kill Respondent if he is returned to Yemen." *Id.* at 23.

9

The BIA agreed with the IJ's reasoning and decided to "adopt and affirm his decision." *Id.* at 4 (citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994)). The BIA recounted that the IJ "highlighted significant concerns regarding the credibility of the testimony of the respondent and his witnesses based on internal inconsistencies and omissions." *Id.* It explained that "[i]n light of these inconsistencies, the Immigration Judge found that it was necessary for the respondent to provide reasonably available corroboration in support of his claim," including "testimony from his wife, sister, and stepfather, each of whom were in the United States at the time of the hearing and had knowledge of the respondent's fear of returning to Yemen." *Id.* The BIA observed that the Immigration and Nationality Act "permits an Immigration Judge to require an applicant to provide evidence to corroborate otherwise credible testimony, unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* (citing 8 U.S.C. § 1229a(c)(4)(B)). In his appeal to the BIA, however, Al Saidi offered "no argument regarding the need for corroboration or the availability of additional evidence," so the BIA concluded that "he has waived any challenge" to the "determination" of the IJ that corroboration was required. *Id.* (citing *Matter of R-A-M-*, 25 I. & N. Dec. 657, 658 n.2 (BIA 2012)).

The BIA further agreed with the IJ that the "claim for CAT protection relied on the occurrence of a series of hypothetical events" and concluded that the IJ "did not clearly err in finding that the respondent did not prove that it was more likely than not that he would be tortured by or with the consent or acquiescence of a public official." *Id.* (citing *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590 (BIA 2015)). The BIA also said that it was not clearly erroneous for the IJ to conclude that "that Houthis control 80 percent of Yemen" but do not

"have count[r]ywide control or operate with absolute impunity." *Id.* at 5. Al Saidi timely filed a petition for review in this court.

## DISCUSSION

"When the BIA issues an opinion, the opinion becomes the basis for judicial review of the decision of which the alien is complaining." *Singh v. Bondi*, 139 F.4th 189, 196 (2d Cir. 2025) (quoting *Bhagtana v. Garland*, 93 F.4th 592, 593 (2d Cir. 2023)). But when, as in this case, "the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." *Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006). "Our review of the IJ's decision includes the portions not explicitly discussed by the BIA, but not those grounds explicitly rejected by the BIA." *Malets v. Garland*, 66 F.4th 49, 53 (2d Cir. 2023) (alteration omitted) (quoting *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018)).

Congress has specified that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, we review the agency's decision for "substantial evidence" and "must defer to the factfinder's findings based on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir. 2005) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "The scope of review 'under the substantial evidence standard is exceedingly narrow, and we will uphold the BIA's decision unless the petitioner demonstrates that the record evidence was so compelling that no reasonable factfinder could fail to find him eligible for relief.'" *Singh*, 11 F.4th at 113 (quoting *Mu Xiang Lin v. DOJ*, 432 F.3d 156, 159 (2d Cir. 2005)).

11

The Supreme Court has clarified that "§ 1252(b)(4)(B) requires courts to review the entirety of the agency's conclusions—both the underlying factual findings and the application of the INA to those findings—for substantial evidence." *Urias-Orellana v. Bondi*, 607 U.S. 537, 545 (2026). Thus, while we have previously applied a different standard when reviewing the application of law to fact,[2] we now apply the substantial evidence standard not only to "the underlying factual findings" but also to "the agency's application of the statute to those findings." *Urias-Orellana*, 607 U.S. at 544.

---

[2] *See, e.g., Sufiyan v. Blanche*, 177 F.4th 111, 115 (2d Cir. 2026) (reviewing "the application of law to facts anew, without deferring to the reasoning of the BIA"); *Toalombo Yanez v. Bondi*, 140 F.4th 35, 37 (2d Cir. 2025) (holding that "the appropriate standard of review" for a "hardship determination" under 8 U.S.C. § 1229b(b)(1)(D) "is for clear error"); *Reid v. Bondi*, 132 F.4th 109, 121 (2d Cir. 2024) (stating that we review "the application of law to facts" *de novo*) (quoting *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022)); *Ud Din v. Garland*, 72 F.4th 411, 418 (2d Cir. 2023) (stating that "we review *de novo* … the application of law to facts") (quoting *Scarlett v. Barr*, 957 F.3d 316, 326 (2d Cir. 2020)); *Mendis v. Filip*, 554 F.3d 335, 338 (2d Cir. 2009) (stating that we "review *de novo* … the application of law to fact") (quoting *Passi v. Mukasey*, 535 F.3d 98, 101 (2d Cir. 2008)); *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("[W]e review *de novo* the IJ's determination of mixed questions of law and fact, as well as … the IJ's application of law to facts."); *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003) ("[I]f the issue on appeal involves the proper application of legal principles to the facts and circumstances of the individual case at hand, our review has been *de novo*."); *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000) ("[W]hen the situation presented is the BIA's application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes, 'our review of the BIA's asylum and withholding of deportation determinations is *de novo*.'") (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir. 1995)).

We have not previously identified the standard by which we review the determination of the BIA that a petitioner's claim has been waived or forfeited. *See Steevenez v. Gonzales*, 476 F.3d 114, 118 n.2 (2d Cir. 2007) (noting that "this Court has not determined a standard of review of the BIA's procedural determination that a claim before the BIA has been waived"). Because in this case we must apply a standard of review, we hold that we review a BIA determination of waiver or forfeiture for abuse of discretion.

Under the applicable regulations, the BIA "*may* summarily dismiss any appeal or portion of any appeal in any case in which," among other circumstances, "[t]he party concerned fails to specify the reasons for the appeal." 8 C.F.R. § 1003.1(d)(2)(i)(A) (emphasis added). To avoid summary dismissal, "[t]he party taking the appeal must identify the reasons for the appeal," "must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged," and "must identify the specific factual and legal finding or findings that are being challenged." *Id.* § 1003.3(b).

The Supreme Court "has repeatedly observed" that "the word 'may' clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (internal quotation marks and emphasis omitted). Our court has also recognized that "may" indicates that the relevant "officials have discretion." *Garcia v. Heath*, 74 F.4th 44, 48 (2d Cir. 2023). We therefore agree with the Third Circuit that because the BIA "*may* determine when to summarily dismiss an appeal for lack of specificity and when the BIA is sufficiently appraised of the appealable issues to entertain the appeal," the proper standard is to "review such dismissals for abuse of discretion." *Uddin v. Att'y Gen.*, 870 F.3d 282, 288 (3d Cir. 2017) (emphasis added) (internal quotation marks

13

omitted). Other circuits have reached similar conclusions.[3] Abuse of discretion is the appropriate standard even when the BIA says that it has dismissed an applicant's claim because it "found his claim 'waived,' and not 'summarily dismissed.'" *Uddin*, 870 F.3d at 288. Even if the BIA "may not have used the magic words 'summarily dismiss,' it was clearly unable to address [the] claim because it could not discern [the applicant's] grievance with the IJ's CAT ruling, and it dismissed the claim on those grounds." *Id.*

Bearing in mind these standards of review, we proceed to consider the agency's dismissal of Al Saidi's application for CAT relief based on (1) the failure to provide corroboration and (2) the failure to establish a likelihood of torture.

**I**

The IJ denied Al Saidi's application for deferral of removal under the CAT for failure to present reasonably available corroborating evidence. The BIA affirmed the decision of the IJ by adopting the determination of the IJ that corroboration was required and by concluding that Al Saidi forfeited any challenge to that determination. Al Saidi argues that the BIA erred in doing so. In his view, the determination that corroboration was required relied on a finding that the hearing testimony was incredible without

---

[3] *See Esponda v. Att'y Gen.*, 453 F.3d 1319, 1321 (11th Cir. 2006) ("Because the regulation at issue here indicates that the BIA 'may' summarily dismiss an appeal, it vests discretion in the BIA. Thus, we review the BIA's application of the regulation to summarily dismiss the [petitioners'] appeal for abuse of discretion.") (citation omitted); *Singh v. Gonzales*, 416 F.3d 1006, 1009 (9th Cir. 2005) ("The regulation at issue here states that the BIA 'may' summarily dismiss an appeal for failure to state specific reasons or file a promised brief. … Accordingly, we will not reverse a dismissal under [the regulation] unless the Board has abused its discretion.") (citation omitted).

corroboration because of the purported inconsistencies. Because Al Saidi argued to the BIA that the IJ should have found the testimony credible, he claims that he raised a challenge to the determination that corroboration was required. And he argues that the determination itself was erroneous.

We disagree. We conclude that the agency did not abuse its discretion by treating a challenge to the corroboration requirement as forfeited. Moreover, even if Al Saidi had not forfeited a challenge to the corroboration requirement, we would conclude that the agency did not abuse its discretion by requiring corroboration.

**A**

Before the BIA, Al Saidi argued that the inconsistencies the IJ identified were too "trivial" to justify an adverse credibility finding. Cert. Admin. R. 17. He inferred that the IJ made an adverse credibility finding because, in his view, corroboration may be required only when the testimony is incredible without corroboration. But that premise is incorrect. The IJ neither made nor needed to make an adverse credibility finding before requiring corroboration. Instead, the IJ expressed "concerns as to the quality of the testimony provided and the credibility of the witnesses" before concluding that he "finds it is necessary for [Al Saidi] to corroborate his application with all reasonably available information." *Id.* at 49, 56-57. In reaching that conclusion, the IJ relied on precedent of the BIA holding that "regardless of whether an applicant is deemed credible, he still has the burden to corroborate the material elements of his claim where evidence is reasonably available." *Id.* at 57 (citing *Matter of L-A-C-,* 26 I. & N. Dec. 516, 518-19 (BIA 2015)).

Whether the inconsistencies provided a sufficient basis for an adverse credibility finding is a different question from whether, given

15

the IJ's concerns about the testimony, he was entitled to require corroboration. "Credibility and corroboration are distinct but related issues discussed in separate provisions of the INA and require separate analysis." *Matter of G-C-I-*, 29 I. & N. Dec. 176, 180 (BIA 2025). For that reason, "credibility and corroboration are distinct principles in this Circuit's immigration jurisprudence." *Chuilu Liu v. Holder*, 575 F.3d 193, 198 n.5 (2d Cir. 2009). The Supreme Court has also recognized that "the INA expressly distinguishes between credibility, persuasiveness, and the burden of proof," so even when the agency "treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof." *Garland v. Ming Dai*, 593 U.S. 357, 371 (2021).

The Immigration and Nationality Act provides that "the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof." 8 U.S.C. § 1229a(c)(4)(B); *see also id.* § 1158(b)(1)(B)(ii). It addresses credibility by providing that "the immigration judge may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements," and other inconsistencies, "inaccuracies or falsehoods in such statements." *Id.* § 1229a(c)(4)(C); *see also id.* § 1158(b)(1)(B)(iii). It addresses corroboration by separately providing that "[w]here the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* § 1229a(c)(4)(B). These separate authorities of the IJ—to make an

16

adverse credibility finding and to require corroboration—each aid the IJ in deciding whether the applicant has met his "burden." *Id.* § 1229a(c)(4)(B); *id.* § 1158(b)(1)(B)(ii).

We have previously recognized that the INA "affords factfinders considerable flexibility in requiring corroborating evidence, even for credible testimony." *Likai Gao v. Barr*, 968 F.3d 137, 149 n.11 (2d Cir. 2020). The statute authorizes the IJ to determine that the applicant should provide corroborating evidence. Once the IJ makes that determination, the "evidence *must* be provided" subject only to a sufficient demonstration by the applicant that "the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1229a(c)(4)(B) (emphasis added); *id.* § 1158(b)(1)(B)(ii).

The IJ, like any rational factfinder, might require corroborating evidence for reasons aside from incredible testimony. "An IJ who finds an applicant's testimony credible may still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it did not include specific facts sufficient to demonstrate that the applicant is a refugee," so he might "require evidence to corroborate otherwise credible testimony." *Pinel-Gomez v. Garland*, 52 F.4th 523, 529-30 (2d Cir. 2022) (internal quotation marks omitted). The IJ might determine that "it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim," so "[t]he absence of such [expected] corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Matter of S-M-J-*, 21 I. & N. Dec. 722, 725-26 (BIA 1997). The IJ "may not be able to decide sufficiency of evidence until all the evidence has been presented," so he might require corroborating evidence. *Chuilu Liu*, 575 F.3d at 198. The IJ might require corroborating evidence in order

to decide *whether* the testimony is credible: "[T]here must be sufficient information in the record to judge the plausibility and accuracy of the applicant's claim. Without background information against which to judge the alien's testimony, it may well be difficult to evaluate the credibility of the testimony." *Matter of Dass*, 20 I. & N. Dec. 120, 124 (BIA 1989). As a result, "corroborative background evidence that establishes a plausible context for the persecution claim (or an explanation for the absence of such evidence) may well be essential." *Id.* at 125. And, of course, "corroboration may be found to fill an evidentiary gap created when testimony is unspecific or otherwise unpersuasive on its own." *Matter of G-C-I-*, 29 I. & N. Dec. at 181.

To be sure, we have said that "[a]n applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). But that means that a failure of corroboration may *support* an adverse credibility finding. It does not mean that the only circumstance in which an IJ may require corroboration is when he has already made an adverse credibility finding. To the contrary, we and other courts have recognized that "an applicant may be generally credible but his testimony may not be sufficient to carry the burden of persuading the fact finder of the accuracy of his claim of crucial facts if he fails to put forth corroboration that should be readily available." *Wei Sun v. Sessions*, 883 F.3d 23, 28 (2d Cir. 2018). As a result, "the agency is entitled to require reasonably available corroborating evidence even for credible testimony." *Moller v. Garland*, No. 21-6564, 2024 WL 2747253, at *2 (2d Cir. May 29, 2024). Thus, "an immigration judge exercises 'substantial leeway to demand corroboration of an asylum applicant's allegations whether or not the judge finds the applicant

18

credible.'" *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010) (quoting *Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009)). "Only if such evidence is beyond the reasonable ability of the immigrant to obtain is the judge precluded from demanding corroboration." *Krishnapillai*, 563 F.3d at 618. An IJ need not even provide a "continuance for the applicant to obtain that evidence prior to rendering a decision on the application," *Wei Sun*, 883 F.3d at 29; *see also Chuilu Liu*, 575 F.3d at 198 n.6, because the corroboration requirement reflects the fact that "the alien bears the ultimate burden of introducing such evidence without prompting from the IJ," *Chuilu Liu*, 575 F.3d at 198; *see also Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008) ("[T]he REAL ID Act clearly states that corroborative evidence may be required, placing immigrants on notice of the consequences for failing to provide corroborative evidence.").

We have not previously needed to decide "whether the IJ's decision to require corroboration is a legal or discretionary determination." *Pinel-Gomez*, 52 F.4th at 530. We conclude here that it is discretionary because the INA authorizes the IJ to determine that the applicant has met his burden of proof without corroboration, but it also authorizes the IJ to "determine[] that the applicant should provide evidence which corroborates otherwise credible testimony." 8 U.S.C. § 1229a(c)(4)(B); *id.* § 1158(b)(1)(B)(ii). The IJ may make such a determination subject to a single statutory limitation: "*Only* if such evidence is beyond the reasonable ability of the immigrant to obtain is the judge precluded from demanding corroboration." *Krishnapillai*, 563 F.3d at 618 (emphasis added). And the INA expressly directs that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B), 1229a(c)(4)(B), or 1231(b)(3)(C) of this title, unless the court finds, pursuant to subsection (b)(4)(B), that a

19

reasonable trier of fact is *compelled* to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4) (emphasis added); *see also Chuilu Liu*, 575 F.3d at 197-98 ("[W]e review with substantial deference an IJ's determination that corroborating evidence was reasonably available to the applicant."). That statutory framework creates a range of circumstances under which the IJ has the discretion to require corroboration. *Cf. Matter of L-A-C-*, 26 I. & N. Dec. at 524 (explaining that § 1158(b)(1)(B)(ii) "was intended to codify *Matter of S-M-J-* and not to impose additional rigid requirements for the consideration of corroboration").[4]

An IJ does not abuse his discretion when he requires corroborating evidence in the absence of an adverse credibility

---

[4] We have also recognized that the IJ must explain "why it is reasonable under the BIA's standards to expect such corroboration." *Manning v. Barr*, 954 F.3d 477, 485 (2d Cir. 2020) (quoting *Diallo*, 232 F.3d at 290). The obligation to follow the precedents of the BIA reflects the regulatory requirement that the published decisions of the BIA and of the Attorney General "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. § 1003.1(g)(2). "It is a familiar rule of administrative law that an agency must abide by its own regulations." *United States v. Kahn*, 5 F.4th 167, 177 (2d Cir. 2021) (Menashi, J., dissenting) (quoting *Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 654 (1990)). As a result, "the Board's interpretation of the immigration law, when set forth in a published Board decision, remains an authoritative statement of the law unless modified or overruled by the Attorney General." *Matter of E-L-H-*, 23 I. & N. Dec. 814, 825 (BIA 2005). The BIA may revise its precedents but in doing so it must show "that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis omitted); *see also Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011). That the agency may constrain its own discretion by regulation or precedent, however, does not alter the conclusion that the agency has a range of discretion to require corroboration.

finding. Indeed, an adverse credibility finding by itself would be a sufficient ground for denying an application for immigration relief. *See, e.g.*, *Xue Hong Yang v. DOJ*, 426 F.3d 520, 522 (2d Cir. 2005). If corroboration could not be required unless the IJ had already made an adverse credibility finding, then the requirement to provide corroborating evidence would never contribute to the IJ's determination of "whether the applicant has met [his] burden." 8 U.S.C. § 1229a(c)(4)(B); *id.* § 1158(b)(1)(B)(ii). Corroboration would become relevant only after the IJ had *already* determined that the applicant failed to satisfy his burden, and its function would be only to rehabilitate an insufficient evidentiary showing. *Cf. Chuilu Liu*, 575 F.3d at 199 (noting that an alien might provide an "explanation for the failure to provide such corroborating evidence, either in a motion to reopen or on appeal to the BIA"). That approach conflicts with a fair reading of the INA and with the recognition that the IJ has "substantial leeway to demand corroboration." *Krishnapillai*, 563 F.3d at 618.

In this case, the IJ did not make an adverse credibility finding before he determined that corroborating evidence was required. An IJ may require corroboration "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim," *Matter of S-M-J-*, 21 I. & N. Dec. at 725, and that was the basis of the IJ's decision to require corroboration here. If it were true that Al Saidi lived under such a severe threat that he spent nine months hiding from the Balwi family disguised in women's clothing, it would be reasonable to expect his wife to testify to that experience. And if the Balwis then chased him all the way to Yonkers, it would be reasonable to expect his wife or his adoptive father—with whom he lived in Yonkers, *see* Cert. Admin. R. 128-29—to corroborate that threat too. In a prior case in which an applicant

21

failed to corroborate facts material to his claim of persecution, the BIA said that "[w]e do not find it unreasonable to expect some type of corroboration from the sister in the form of a letter or affidavit, especially given her frequent contact with the respondent." *Matter of M-D-*, 21 I. & N. Dec. 1180, 1183 (BIA 1998). When requiring corroboration in this case, the IJ followed a similar rationale.

## B

Understanding the basis of the corroboration requirement allows us to evaluate whether the BIA abused its own discretion by concluding that Al Saidi forfeited any challenge to that requirement on appeal. *See* Cert. Admin. R. 4 ("On appeal, the respondent makes no argument regarding the need for corroboration or the availability of the additional evidence."). We conclude that it did not.

To establish that the IJ abused his discretion by requiring corroboration, Al Saidi needed to demonstrate that he "does not have the evidence and cannot reasonably obtain the evidence," 8 U.S.C. § 1229a(c)(4)(B); *see also id.* § 1158(b)(1)(B)(ii), or that it was "[un]reasonable under the BIA's standards to expect such corroboration," *Manning*, 954 F.3d at 485. He needed to make such an argument with at least as much specificity as would be required to preserve an issue for review on appeal to this court.[5]

---

[5] The parties have "cited no authority, and we are aware of none, suggesting that the specificity required of an alien to raise sufficiently an issue for review by the BIA is any more lenient than the specificity required of an alien to preserve an issue for review by this Court. To so conclude would create, moreover, the anomalous situation where the BIA would be forced to consider a claim that this Court, absent that consideration by the BIA, would be barred from reviewing." *Steevenez*, 476 F.3d at 118 n.2.

Al Saidi argued to the BIA that inconsistencies in the testimony did not justify an adverse credibility finding, but that argument did not address whether the IJ abused his discretion in requiring corroboration. The IJ had explained that Al Saidi's "wife is not only here in the United States, she is in the state of New York in the Bronx," and even though Al Saidi "confirmed that his wife has knowledge about what happened to [him] in Yemen and has knowledge about the threats that the Balwi family purportedly is making to [him] from Yemen," she "was not offered as a witness to testify and … offers no affidavit to the Court." Cert. Admin. R. 57. The IJ had further explained that Al Saidi's adoptive father "also has personal knowledge as to the basis of [Al Saidi's] fear of returning to Yemen," "had property that was affected by the Balwi family in Yemen," and "is also in New York and could have provided testimony or an affidavit to the Court" but "did not do so." *Id.* And the IJ had observed that Al Saidi "has a sibling in California," and he "spoke to his sister … a few months ago," but "no affidavit or testimony were tendered." *Id.*

On appeal to the BIA, Al Saidi made no argument that the IJ erred in his determination (1) that corroborating evidence from Al Saidi's relatives was "reasonably available," (2) that Al Saidi failed to provide that evidence or adequately explain its absence, or (3) that a precedent of the BIA denied the IJ the discretion to require corroboration under these circumstances. *Id.* He stated only that remand was "necessary" for "a new credibility decision" and, based on that new decision, there would be further consideration of "whether corroborating evidence is needed in light of Respondent's credible testimony." *Id.* at 22. The BIA did not abuse its discretion when it decided that Al Saidi had forfeited "any challenge" to the IJ's

requirement of corroboration because he offered no argument that the IJ lacked the discretion to impose the requirement. *Id.* at 4.

When our court evaluates a petition for review, "'[w]e consider abandoned any claims not adequately presented in an appellant's brief,' and an appellant's failure to make 'legal or factual arguments' constitutes abandonment." *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997)). The BIA has the discretion to apply a similar standard when evaluating an appeal from the decision of an IJ. *See supra* note 5.[6] "[W]here the agency properly applies its own waiver rule and refuses to consider the merits of an argument that was not raised before the IJ, we will not permit an end run around those discretionary agency procedures by addressing the argument for the first time in a petition for judicial review." *Prabhudial v. Holder*, 780 F.3d 553, 555 (2d Cir. 2015) (alteration omitted) (quoting *Pinos-Gonzalez v. Mukasey*, 519 F.3d 436, 440 (8th Cir. 2008)).

## C

The BIA adopted the decision of the IJ to deny the application for relief under the CAT based on the failure to provide reasonably available corroborating evidence. It is well established that the agency may deny an application based on a lack of corroboration—at least with respect to asylum and statutory withholding of removal as opposed to withholding or deferral of removal under the CAT. *See*

---

[6] Because the standard the BIA applied corresponds to what would be "required of an alien to preserve an issue for review by this Court," *Steevenez*, 476 F.3d at 118 n.2, we need not decide whether the BIA may impose a standard that is "tougher than the waiver standard in our court," *Rangel-Fuentes v. Bondi*, 155 F.3d 1138, 1150 (10th Cir. 2025) (Hartz, J., concurring in part and dissenting in part).

*Wei Sun*, 883 F.3d at 28; *Matter of L-A-C-*, 26 I. & N. Dec. at 518-19. We have frequently held that when an application for relief under the CAT relies "on the same factual predicate" as an application for asylum or statutory withholding of removal, the agency may deny all relief based on the same lack of corroboration. *De Qin Li v. Gonzales*, 220 F. App'x 20, 21 (2d Cir. 2007) (citing *Xue Hong Yang*, 426 F.3d at 523).

It might be argued, however, that an IJ cannot rely on a lack of corroboration to deny an application for CAT relief to the same extent as an application for other immigration relief. The INA authorizes the IJ to require corroboration in the context of a removal proceeding, *see* 8 U.S.C. § 1229a(c)(4)(B), and an asylum adjudication, *see id.* § 1158(b)(1)(B)(ii), and it clarifies that the asylum standards apply to an application for statutory withholding of removal, *see id.* § 1231(b)(3)(C) ("[T]he trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in … section 1158(b)(1)(B)"). By contrast, the INA does not address an application for relief under the CAT. Such an application is governed by regulations that implement the Convention Against Torture. *See* 8 C.F.R. § 1208.16(c). Those regulations do not contain the same language as the statutes explicitly authorizing the IJ to require corroboration.

Nevertheless, we conclude that an application for CAT relief may be denied for lack of corroboration in the same manner as an application for asylum or statutory withholding of removal.[7] "In

---

[7] *Accord Luziga v. Att'y Gen.*, 937 F.3d 244, 254-55 (3d Cir. 2019) ("As with asylum or withholding of removal, noncitizens seeking deferral of removal [under the CAT] bear the burden of proof. … [C]orroborating evidence may be required when it is reasonable to expect it, such as for facts that are central to a claim and easily verified.") (internal quotation marks and

considering an application for withholding [or deferral] of removal under the Convention Against Torture, the immigration judge shall first determine whether the alien is more likely than not to be tortured in the country of removal." 8 C.F.R. § 1208.16(c)(4); *id.* § 1208.17(a). During that adjudication, "[t]he burden of proof is on the applicant … to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2). The regulations specify that "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.*; *see also id.* § 208.16(c)(2). By expressly providing that the testimony *may* be sufficient without corroboration, the regulation acknowledges that the testimony may *not* be sufficient without corroboration.

In other words, like the statutory provisions about corroboration, the regulation "anticipates that corroboration will generally be necessary to meet an applicant's burden of proof." *Matter*

---

alteration omitted); *see also Bazile v. Garland*, 76 F.4th 5, 15 (1st Cir. 2023) ("Uncorroborated conjecture, without more, cannot carry the day on a claim under the CAT."); *Cabrera-Ruiz v. Garland*, 37 F.4th 395, 400 (7th Cir. 2022) (holding that an alien's "showing is insufficient for him to receive CAT relief" because one witness "did not have personal knowledge to independently corroborate his torture claims" and the attestation of another "does not corroborate [the alien's] torture claim"); *Gutierrez-Vargas v. Garland*, 42 F.4th 877, 883 (8th Cir. 2022) ("Although an applicant's credible testimony '*may* be sufficient to sustain the burden of proof without corroboration,' the IJ found that Gutierrez-Vargas's testimony, even taken as true, did not satisfy that burden. Gutierrez-Vargas has failed to demonstrate any abuse of discretion in that ruling.") (citation omitted) (quoting 8 C.F.R. § 1208.16(c)(2)); *Unuakhaulu v. Gonzales*, 416 F.3d 931, 938 (9th Cir. 2005) (approving the denial of a CAT claim when the IJ "found that corroborating proof was 'more than necessary here'" and "[c]orroborative evidence in this case would have been readily available").

*of G-C-I-*, 29 I. & N. Dec. at 180; *see also Wei Sun*, 883 F.3d at 28. An IJ evaluating an application for CAT relief accordingly has the discretion to decide that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided." *Matter of S-M-J-*, 21 I. & N. Dec. at 725.

The language applicable to an application for CAT relief is exactly the same as the parallel language applicable to an application for statutory withholding of removal. *Compare* 8 C.F.R. § 1208.16(c)(2) (CAT) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."), *with id.* § 1208.16(b) (statutory withholding of removal) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). And it is beyond dispute that when an IJ adjudicates an application for withholding of removal, the IJ may "determine[] that the applicant should provide evidence that corroborates otherwise credible testimony." 8 U.S.C. § 1158(b)(1)(B)(ii); *id.* § 1231(b)(3)(C) (applying § 1158(b)(1)(B)(ii) to statutory withholding of removal). The identical language in the CAT regulation must have the same meaning. "[G]enerally, identical words used in different parts of the same statute are presumed to have the same meaning." *Robers v. United States*, 572 U.S. 639, 643 (2014) (internal quotation marks and alteration omitted) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006)). The regulation would "not use the same words to accomplish the opposite objective." *Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30, 34 (2d Cir. 2020).

The BIA has long held that the authority of an adjudicator to require corroboration was a consequence of putting the burden of proof on the alien seeking immigration relief: "Because the burden of

proof is on the alien, an applicant should provide supporting evidence, both of general country conditions and of the specific facts sought to be relied on by the applicant, where such evidence is available." *Matter of S-M-J-*, 21 I. & N. Dec. at 724. The BIA concluded that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided." *Id.* at 725.

At one point, the Ninth Circuit disagreed with the BIA and adopted a rule that corroboration could be required only when there has been an adverse credibility finding.[8] But Congress then amended the INA with the REAL ID Act of 2005. Among other things, Congress expressly authorized the IJ to require corroboration during a removal proceeding or when adjudicating an application for asylum or statutory withholding of removal.[9] Those amendments "overrode these judge-made requirements" and restored the preexisting agency discretion. *Singh*, 139 F.4th at 200 n.6. In particular, "the standards concerning corroboration that Congress intended to codify were those set forth by the Board in *Matter of S-M-J-*." *Matter of L-A-C-*, 26 I. & N. Dec. at 519.[10]

---

[8] *See Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000) ("We reaffirm that an alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration. To the extent that decisions such as *Matter of S-M-J-* and *Matter of M-D-* establish a corroboration requirement for credible testimony, they are disapproved.").

[9] *See* Pub. L. No. 109-13, Div. B, § 101, 119 Stat. 231, 303-04 (2005).

[10] *See* H.R. Rep. No. 109-72, at 166 (2005) (Conf. Rep.), *as reprinted in* 2005 U.S.C.C.A.N. 240, 292 ("Congress anticipates that the standards in *Matter of S-M-J-*, including the BIA's conclusions on situations where corroborating evidence is or is not required, will guide the BIA and the courts in interpreting this clause.").

28

While the INA does not address the standards by which the agency adjudicates an application for CAT relief, the congressional endorsement of *Matter of S-M-J-* further supports the conclusion that the BIA was correct that an IJ has the discretion to require an alien to provide corroboration in order to meet his burden of proof. With respect to an application for CAT relief, "[t]he burden of proof is on the applicant … to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The Third Circuit has explained that "[a]s with asylum or [statutory] withholding of removal, noncitizens seeking deferral of removal [under the CAT] bear the burden of proof." *Luziga*, 937 F.3d at 254. It follows that "corroborating evidence may be required when it is reasonable to expect it." *Id.* at 255. We agree.

Because Al Saidi's failure to provide reasonably available corroborating evidence was a valid basis for denying an application for relief under the CAT, the agency did not err by relying on that ground for dismissal here. Nor, for the reasons described above, was requiring corroboration an abuse of discretion in the first place.

## II

The agency also did not err in denying Al Saidi's application for relief on the merits because he failed to establish a likelihood of torture. As noted, an applicant for relief under the CAT bears the burden "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). When the applicant's claim that he will be tortured depends on a possible chain of future events, the "alien will never be able to show that he faces a more likely than not chance of torture if one link in the chain cannot be shown to be more likely than

29

not to occur." *Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) (quoting *Matter of J-F-F-*, 23 I. & N. Dec. at 918 n.4). "It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." *Id.* (quoting *Matter of J-F-F-*, 23 I. & N. Dec. at 918 n.4).

In this case, the decision of the agency that Al Saidi failed to meet his burden was supported by substantial evidence. *See Nasrallah v. Barr*, 590 U.S. 573, 583-84 (2020) (identifying the standard of review for "factual challenges to CAT orders" as "the substantial-evidence standard").

Al Saidi argues that if he returns to Yemen, the Houthis may stop him at the airport or at an inland checkpoint, those Houthis may know that the Balwi family of Ibb wants retribution from Al Saidi, those Houthis will deliver Al Saidi to the Balwis in Ibb, and the Balwis will not be satisfied with a new offer of payment or other satisfaction but will subject Al Saidi to torture. It cannot be said that "any reasonable adjudicator" evaluating the evidence that Al Saidi presented "would be compelled to conclude" that these events are all more likely than not to occur. 8 U.S.C. § 1252(b)(4)(B); *see also Majidi*, 430 F.3d at 80 (explaining that to overcome the substantial evidence standard, a petitioner "must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony.") (quoting *Zhou Yun Zhang v. INS*, 386 F.3d 66, 76 (2d Cir. 2004)).

To the contrary, the agency relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Majidi*, 430 F.3d at 81 (quoting *Consol. Edison*, 305 U.S. at 229). First, Al Saidi did not establish that the Houthis either could or

would track down a single person entering Yemen.[11] Neither he nor his family members were harmed while in Yemen either before or after 2014.[12] Al Saidi cannot "demonstrate[] that the record evidence was so compelling that no reasonable factfinder could fail to find him eligible for relief." *Singh*, 11 F.4th at 113 (quoting *Mu Xiang Lin*, 432 F.3d at 159).

Al Saidi does not challenge the determination of the IJ that he had "not satisfactorily demonstrated that internal relocation is impossible." Cert. Admin. R. 62. The BIA adopted that determination and decided that it was "not clearly erroneous" for the IJ to find "that Houthis control 80 percent of Yemen" but do not "have count[r]ywide control or operate with absolute impunity." *Id.* at 5. Al Saidi's "ability to relocate internally means that he cannot establish a likelihood of torture." *Singh*, 11 F.4th at 118; *see* 8 C.F.R. § 1208.16(c)(3).

---

[11] *Cf. Singh*, 11 F.4th at 117 (holding that a petitioner could not overcome the substantial evidence standard when the record "reflected that there is no central countrywide registration system or nationwide police database that members of [an opposition party] could use to track rivals").

[12] *Cf. Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) ("The absence of any claims that members of her uncle's family were persecuted after his death, in conjunction with evidence that her own mother and daughters continued to live in El Salvador after Melgar emigrated without harm, cuts against her argument that she has a well-founded fear of persecution."); *Singh*, 11 F.4th at 117 ("As the IJ noted, there have been no recent reports of persecution against members of the Akali Dal Mann anywhere in India and Singh did not identify any."); *Shizhuang Dai v. Barr*, 836 F. App'x 25, 27 (2d Cir. 2020) ("The agency reasonably concluded that the record did not show such a likelihood because Dai testified that he and his family had practiced Christianity in China for years without suffering persecution.").

31

**CONCLUSION**

The agency did not abuse its discretion by determining either that corroborating evidence was required or that Al Saidi forfeited any challenge to the corroboration requirement on appeal. The agency did not err by denying his application for CAT relief based on his failure to provide corroborating evidence. And the decision of the agency that he failed to meet his burden to establish the likelihood of torture was supported by substantial evidence. We deny the petition for review.